IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE MORGAN,              : | |
| : | CIVIL ACTION |
| Plaintiff,     : | |
| : | |
| v.                    : | |
| : | NO.  08-2133 |
| MICHAEL J. ASTRUE, Commissioner of   : | |
| Social Security,          : | |
| : | |
| Defendant.    : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                      October 30, 2009

Currently before the Court are the Objections of the Plaintiff, Grace Morgan, to the Report and Recommendation of United States Magistrate Judge L. Felipe Restrepo affirming the denial of Social Security disability insurance benefits.  Having engaged in a thorough review of the Objections, the Response of the Commissioner of Social Security (the "Commissioner"), the Magistrate Judge's Report and Recommendation, and the certified administrative record of evidence, the Court overrules the Objections and affirms the final decision of the Commissioner.

**I.     PROCEDURAL HISTORY**[1]

On October 17, 2003, Plaintiff Grace Morgan, who was then fifty years old, filed a protective application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, alleging disability since May 14, 1999.  (R. 139-141.)  Her date last insured extended through to December 31, 2004.  (R. 92.)  As a result of the state

---

[1]  For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

agency's denial of her application on initial review, (R. 109-12), Plaintiff requested an administrative hearing. (R. 113-15.) Administrative Law Judge ("ALJ") Diane Moskal presided over the hearing on July 8, 2004, at which time Plaintiff claimed disability due to a musculoskeletal impairment with accompanying migraine headaches. (R. 52-89.) Additionally, the ALJ heard testimony from a vocational expert. (R. 83-89.) In an opinion issued August 7, 2004, the ALJ denied Plaintiff's claim for benefits, finding that she retained the residual functional capacity to perform a range of unskilled, light work. (R. 92-97.)

Plaintiff thereafter sought review by the Appeals Counsel. (R. 121-25.) On November 10, 2005, the Appeals Counsel vacated the ALJ's decision and remanded for resolution of the following issues: (1) the severity of Plaintiff's obesity; (2) the severity of Plaintiff's headaches; and (3) a function-by-function assessment of the claimant's ability to do work-related physical and mental activities with a sufficient rationale and specific references to evidence of record. (R. 126-29.)

The ALJ conducted a second administrative hearing on March 1, 2006, at which time Plaintiff and a second vocational expert testified. (R. 22-51.) Again, however, on May 1, 2006, the ALJ denied Plaintiff's claim for DIB, finding that she had the capacity to perform a range of unskilled, light jobs, which existed in significant numbers in the regional and national economies. (R. 101-08.) Although Plaintiff sought review a second time, the Appeals Counsel denied Plaintiff's request and affirmed the ALJ's decision, thereby making it the final decision of the Commissioner of Social Security. (R. 6-10.)

Plaintiff initiated the current action on May 7, 2008, seeking federal review of the Commissioner's decision. The Court referred the matter to Magistrate Judge L. Felipe Restrepo,

who held oral argument and subsequently issued a Report and Recommendation, dated July 31, 2009, affirming the Commissioner's decision. Plaintiff filed Objections to the Report and Recommendation on August 10, 2009, and the Commissioner responded. The Court now turns to consideration of these Objections.

## II.     STANDARDS OF REVIEW[2]

### A.     Standard for Judicial Review of an ALJ's Decision

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)). In making this determination, a reviewing court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. Monsour, 806 F.2d at 1190. In other words, even if the reviewing court, acting *de novo*, would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.") (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

---

[2] The medical record, ALJ's findings, and statutory framework for assessing a disability claim were adequately summarized by the Magistrate Judge. Accordingly, the Court incorporates those portions of the Report and Recommendation by reference into this opinion.

### B. Standard of Review on Objections to a Report and Recommendation

When a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in *de novo* review of only those issues raised on objection. 28 U.S.C. § 636(b)(1) (2005); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. See U.S. v. Raddatz, 447 U.S. 667, 676 (1980).

## III. DISCUSSION

Plaintiff presently raises four Objections to the Report and Recommendation. Specifically, she contends that the Magistrate Judge erred in affirming: (1) the ALJ's finding that Plaintiff's chronic headaches were "non-severe"; (2) the ALJ's refusal to accord any weight to the rulings of workers' compensation judge; (3) the ALJ's failure to accord controlling weight to the opinions of Plaintiff's treating physician, Dr. Steven Rosen; and (4) the ALJ's finding that Plaintiff's statements concerning her impairments and their effect on her ability to work were not entirely credible. As set forth in detail below, the Court finds that none of these Objections warrant rejection of the Report and Recommendation.

### A. Duplicative Objections

As indicated above, the first, third, and fourth Objections challenge the ALJ's step two severity findings, weighting of physicians' opinions, and credibility determination respectively. The bulk of the argument in support of such Objections, however, consists of a duplication of the

briefing presented to the Magistrate Judge in the Request for Review. In light of the requirements of the Federal Rules of Civil Procedure, the Court declines to engage in *de novo* review of such Objections.

Federal Rule of Civil Procedure 72 provides that a party may serve and file "specific written objections to the proposed findings and recommendations." FED. R. CIV. P. 72. Local Rule of Civil Procedure 72.1 goes on to indicate that such written objections "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." E.D.P.A. R. 72.1. In other words, an objecting party must identify specific errors in the magistrate judge's analysis without simply rehashing arguments already raised to the magistrate judge. As explained by one federal district court:

> If the magistrate system is to be effective, and if profligate wasting of judicial resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the magistrate except in those areas where counsel, consistent with the [Federal Rule of Civil Procedure], can in good conscience complain to the district judge that an objection to a particular finding or recommendation is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law . . ." The federal procedural scheme thus calls for rifle-shot objections, and its legitimate purposes are frustrated by a vague gunshot blast . . .

Sackall v. Heckler, 104 F.R.D. 401, 402-03 (D.R.I. 1984); see also Goney v. Clark, 749 F.2d 5, 6 (3d Cir. 1984) ("We are satisfied that providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process.").

Repeatedly, courts, both within and outside of the Third Circuit, have held that objections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review. See, e.g., Edmond v. Collins, 8 F.3d 290, 293 n.7 (5th Cir. 1993)

(holding that "[a]lthough petitioner filed written objections to the magistrate's findings, these objections consisted solely of a copy of the brief filed to support the original habeas petition to the district court. . . . [Petitioner] thus did not raise a factual objection by merely reurging arguments contained in the original petition."); Nghiem v. Kerestes, No. CIV.A.08-4224, 2009 WL 960046, at *1 n.1 (E.D. Pa. Apr. 3, 2009) (declining to engage in additional review of objections where the objections merely re-articulated all the claims and theories for relief that were addressed and dismissed by the magistrate judge); King v. Caruso, 542 F. Supp. 2d 703, 706 (E.D. Mich. 2008) (noting that objections to a report and recommendation that merely summarize what was brought before the magistrate judge are not sufficient to alert the district court to alleged errors by the magistrate judge); Smith v. City of N. Charleston, 401 F. Supp. 2d 530, 533 (D.S.C. 2005) (holding that objections to a magistrate judge's report and recommendation that consisted of rehashing the arguments made to the magistrate judge did not warrant *de novo* review since they did not cite specific conclusions of the report that were erroneous); Betancourt v. Ace Ins. Co. of P.R., 313 F. Supp. 2d 32, 34 (D.P.R. 2004) (finding that where objections are an "exact duplicate" of arguments raised to the magistrate judge, the objections "do not reflect an understanding that a plaintiff may not simply restate the arguments that the Magistrate-Judge considered and expect the Court to treat the filing seriously."); State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada, 246 F. Supp. 2d 231, 239 (S.D.N.Y. 2002) (holding that "filing prior submissions before the district court and the magistrate cannot qualify as the required specific objections to the R & R."); Sanford v. Principi, No. CIV.A.00-502, 2002 WL 32334396, at *1 (S.D.W. Va. Sep. 26, 2002) (holding that objections that fail to direct the district court to any specific error by the magistrate judge do not trigger *de novo* review because such objections "prevent[] the district

court from focusing on disputed issues and thus render[] the initial referral to the magistrate judge useless."), aff'd, 60 Fed. Appx. 473 (4th Cir. 2003); Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (stating that it is "improper . . . to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge").

In the case at bar, Plaintiff's first, third and fourth Objections are almost a verbatim recitation of Plaintiff's Memorandum in support of her Request for Review presented to the Magistrate Judge.  Indeed, a careful comparison of Plaintiff's submissions reveals that, with the exception of the argument discussed in the next section of this opinion and some minor formatting changes, the two briefs are virtually mirror images as to these three Objections.  To now re-address these issues would simply duplicate the thorough efforts of the Magistrate Judge and defeat any benefit of judicial efficiency gained by the report and recommendation process.  As this Court finds no clear error or manifest injustice in the Report and Recommendation, we overrule such duplicative Objections.

    **B.**    **Plaintiff's Objection to the Magistrate Judge's and ALJ's Consideration of Plaintiff's Intermittent Treatment and Absence of Prescription Pain Medication**

Interspersed throughout the first, third, and fourth Objections, Plaintiff raises a single specific challenge to the Report and Recommendation with respect to both the ALJ and Magistrate Judge's citation to the frequency and nature of Plaintiff's treatment – a challenge which now

merits *de novo* review.³  Specifically, the ALJ recognized that while Plaintiff suffered from neck pain and headaches, these conditions were drastically improved by only intermittent outpatient procedures and intermediate use of non-prescription pain medication.  Relying in part on this evidence, the ALJ declined to either find Plaintiff's headaches severe or to credit Plaintiff's testimony.  (R. 106.)  When affirming these holdings as to severity and credibility, the Magistrate Judge likewise cited to:  (1) Plaintiff's  lack of use of any prescription medications, (2) her only sporadic use of Excedrin Migraine, and (3) the reports of dramatic decrease in pain and headaches following her intermittent procedures.  (Report and Recommendation ("R&R") 8-9, 16.)  Plaintiff now argues that both the ALJ's and the Magistrate Judge's reliance on this evidence to discredit the severity of her impairment was in error.

The Court finds no basis for Plaintiff's objection to this analysis.  The Social Security regulations expressly provide that the evidence the ALJ must consider when assessing the credibility of an individual's statements includes the individual's daily activity; *location, duration,*

---

³ This argument, although not raised as a separate Objection, appears throughout Plaintiff's brief and reflects a new claim outside of her verbatim rehashing of her Request for Review arguments.  For example, in her Objection challenging the ALJ's finding that her headaches were not severe, Plaintiff adds a new statement that the Magistrate Judge "adopted [the same] approach" as the ALJ, or "concurred with ALJ" that Plaintiff gets adequate relief from Dr. Rosen's intermittent treatment and that Plaintiff used only over-the-counter Excedrin Migraine, in lieu of prescription medications, to control her pain.  (Pl.'s Objections 6-7.)  To bolster this contention, she adds several additional factual citations for consideration.  (Id.) Likewise, on page 19, in connection with her Objection to the Magistrate Judge's affirmance of the ALJ's credibility determination, Plaintiff adds a short paragraph challenging a finding by both the ALJ and the Magistrate Judge as to Plaintiff's non-use of prescription pain medication. (Id.)  Finally, on page 9, Plaintiff adds a paragraph containing a case citation that intermittent migraines may have an impact on a claimant's functioning.
    While these sporadic additions to her previous brief do not clearly comply with the requirements of Fed. R. Civ. P. 72, the Court gives Plaintiff the benefit of the doubt and addresses this issue.

*frequency, and intensity of the individual's symptoms*; factors precipitating and aggravating the symptoms; *the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms;* treatment, other than medication, received for relief of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms; and other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms   20 C.F.R. § 404.1529(c)(3).  An ALJ is further directed that an individual's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."  Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *7 (S.S.A. 1996); see also Phillips v. Lozado, 91 Fed. Appx. 775, 781 (3d Cir. 2004) (citing 20 C.F.R. § 404.1529 with approval).

This Court's independent review of the record reflects that the ALJ correctly found that Plaintiff's treatment and use of pain medication was intermittent and not consistent with a severe, disabling impairment.  Plaintiff suffered from neck pain and severe migraine headaches, for which she treated with pain management specialist, Steven Rosen, M.D.  Despite claiming disability from these impairments starting in 1999, however, Plaintiff went a year and half – from January 28, 2000 (R. 280) to July 27, 2001 (R. 279) – between visits to Dr. Rosen.  At her July 2001 appointment, Plaintiff was using only Excedrin Migraine occasionally, with no other pain medications.  (R. 279.)  She then had trigger point injections in September of 2001, with "excellent response."  (R. 278.)  Three months later, she underwent a left C2 percutaneous ganligonotomy (R. 258-59), which again provided her three months of "excellent relief."  (R. 274.)  By April of 2002, her pain began to return and Dr. Rosen tried her on Topamax.  (R. 274.)  After her next left C2 ganglionotomy the following month, (R. 260-61), her headaches decreased "dramatically," she weaned from Topamax, and she used over the counter analgesics with

9

"excellent benefit" for her occasional headaches. (R. 272.) Her pain and headaches began to return in September of 2002, but she did not have her next ganglionotomy until December. (R. 262-63, 271.) Between December of 2002 and August of 2003, the record reflects no return visits to Dr. Rosen. From August of 2003 until April 2004, Plaintiff had several MRI's and met with a neurologist for further evaluation, with no remarkable findings. (R. 264-65, 266-70, 299-300-02, 305-06.) Plaintiff also tried several prescription pain medications with no real benefit. (Id.) Ultimately, when Dr. Rosen repeated left cervical facet denervations in April of 2004, Plaintiff ceased all pain medications again until October of 2004. (R. 227, 303.) Her next procedure was in December of 2004 – the time of her date last insured – and she obtained substantial benefit from it until July of 2005. (R. 338-346, 365-66.) From October 2005 until at least the administrative hearing in March 2006, Plaintiff had not met with Dr. Rosen and was only using Excedrin Migraine as needed. (R. 33-34.) In light of this record, the ALJ appropriately concluded that "longitudinal treatment records evidenc[ed] that good pain relief is achieved from widely spread out visits and over-the-counter medications."[4] (R. 105.)

---

[4] Plaintiff attempts to rebut this evidence by citing to the case of McDowell v. Astrue, No. CIV.A.06-3053, 2007 WL 4510600 (D. Ariz. Dec. 7, 2007), for the proposition that "[t]he fact that a claimant's migraine headaches are intermittent in nature does not mean that they do not have some impact on claimant's functioning." (Pl.'s Objections 9.) In McDowell, however, the plaintiff had been suffering almost daily disabling migraines, but, by the time of her hearing, had reduced the number to twelve to fifteen a month through a combination of medication, diet, and exercise. Id. at *1. The ALJ found that the plaintiff's "fairly active lifestyle" of exercising, attending church, preparing meals, and cleaning her home undermined her claim of disability. Id. at *3. The district court rejected that conclusion, noting that plaintiff's disabling impairment was intermittent in nature and her ability to engage in her activities depended on whether she had a headache and the severity of that headache. Id.
    This case stands in stark contrast. Whereas the plaintiff in McDowell suffered, at best, twelve to fifteen migraine headaches a month, progress notes revealed that Plaintiff in this case would go months at a time with either no or very mild headaches. (R. 13, 270, 272-73, 303, 360, 363, 365-66.) These migraine-free periods were not intermittent occasions, but rather

In sum, substantial evidence supports the ALJ's reliance on the limited extent of Plaintiff's medical treatment and use of pain relief medication.  In turn, the Magistrate Judge properly adopted the same approach and recommended that the ALJ's decision be affirmed.  Finding no clear error in this analysis, the Court overrules this Objection.

  C. **<u>Plaintiff's Objection to the ALJ's Disregard of the Workers' Compensation Rules (Objection Number Two)</u>**

In Plaintiff's only other colorable Objection, she argues that the Magistrate Judge erred in affirming the ALJ's disregard of the workers' compensation rulings regarding Plaintiff's disability.  By way of background, Plaintiff had a pending workers' compensation claim against her employer in connection with her claim of work-related disability.  On June 15, 2000, workers' compensation judge Bruce Doman issued a decision finding that Plaintiff demonstrated that she was disabled as of a work related injury on September 24, 1997, and that she was entitled to benefits.  (R. 158-164.)  Subsequently, in March 2005, Judge Doman held a hearing on a petition for modification, at which time the conflicting depositions of Dr. Mannherz, a physician who had examined Plaintiff on several occasions, and Dr. Rosen, Plaintiff's treating physician, were presented.  (R. 166.)  By way of decision issued March 12, 2005, Judge Doman fully credited Dr. Rosen's testimony as to Plaintiff's limitations and found that Plaintiff was limited to part-time work.  (R. 165-172.)  Ultimately, he denied the modification petition, concluding that the employer "failed to prove that the claimant has earning power as required by Section 306(b) of the Act."  (R. 171.)

Although provided with copies of these rulings, the ALJ never explicitly mentioned them in the decision.  Nonetheless – and contrary to Judge Doman – the ALJ found Dr. Mannherz more

---

extended periods of relief.

credible than Dr. Rosen.  In her subsequent Request for Review, Plaintiff argued that the ALJ's failure to discuss the workers' compensation decisions violated the ALJ's obligation to evaluate the opinion of another agency.  The Magistrate Judge, in a comprehensive discussion, rejected this argument.  (R&R 11-14.)  Plaintiff now objects to the Magistrate Judge's conclusion, arguing that "the responsibility to evaluate the opinion of another agency lies with the ALJ, not with the Magistrate Judge on review."  (Pl's Objections 11.)  She goes on to contend that the Magistrate Judge improperly supplied additional factual findings and reasoning in order to bolster the ALJ's decision, instead of reviewing the administrative decision as made.  (Id. at 12.)  Ultimately, she claims that the fact that the ALJ completely disregarded Judge Doman's decisions, without any explanation, contravenes well-established jurisprudence requiring the ALJ to consider and weigh such opinions.  (Id.)

Careful review of the pertinent regulations and jurisprudence compel this Court to disagree with Plaintiff.  Social Security regulations provide that:

> A decision by any nongovernmental agency or any other governmental agency about whether [a claimant] [is] disabled or blind is based on its rules and is not [Social Security's] decision about whether [the claimant] [is] disabled or blind. [Social Security] must make a disability or blindness determination based on Social Security law.  Therefore, a determination made by another agency that [a claimant] [is] disabled or blind is not binding on [Social Security].

20 C.F.R. § 404.1504; see also Gifford v. Barnhart, 129 Fed. Appx. 704, 707 (3d Cir. 2005) (recognizing that the ALJ is not bound by the determination of the Pennsylvania Workers' Compensation Bureau).  Nonetheless, the Third Circuit has held that a disability determination by another government agency is entitled to substantial weight.  Kane v. Heckler, 776 F.2d 1130, 1135 (3d Cir. 1985); Lewis v. Califano, 616 F.2d 73, 76 (3d Cir. 1980).  Thus, "[i]f the ALJ reaches a contrary conclusion, the ALJ must offer an explanation of why he rejected the other

agency's finding." Sell v. Barnhart, No. CIV.A.02-8617, 2003 WL 22794702, at *3 (E.D. Pa. Nov. 17, 2003); see also Somenski v. Barnhart, No. CIV.A.02-8617, 2006 WL 494997, at *9 (E.D. Pa. Feb. 28, 2006).

This general rule can be parsed into two main principles. On one hand, where different standards govern the different agencies' inquiries, a Social Security ALJ may ignore or disregard a judge's or a physicians *conclusions* as to a claimant's disability. Rose v. Chater, No. CIV.A.94-4421, 1995 WL 365404, at *6 (E.D. Pa. Jun. 15, 1995). This holds particularly true in the case of workers' compensation claims, since a workers' compensation claimant must show only that he is unable to return to his previous employment, whereas an award of Social Security requires a finding that the claimant is unable to perform any work. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984); see also Rose, 1995 WL 365404, at *6. Given the different legal standards, an ALJ's failure to discuss or distinguish a workers' compensation conclusion or determination of disability does not require remand. Kuhn v. Barnhart, No. CIV.A.02-6873, 2004 WL 414068, at *14 (E.D. Pa. Mar. 3, 2004).

On the other hand, the ALJ must distinguish between portions of a decision that represent medical findings and portions that represent conclusions as to a claimant's disability for workers' compensation purposes. Coria, 750 F.2d at 247. "The ALJ should not . . . ignore the underlying objective medical findings in the physician's reports, but should instead evaluate those findings by the same standards he or she would use in evaluating medical findings made in the first instance for Social Security claims." Rose, 1995 WL 365404, at *6 (citing Coria, 750 F.2d at 248). In other words, although the ultimate conclusion of the other agency is not controlling, the ALJ must thoroughly consider the medical evidence upon which the agency relied in reaching that decision.

See Gifford, 129 Fed. Appx. at 707.

In the present case, although the ALJ made no specific mention of the two workers' compensation decisions at issue, the Court finds no error in the decision. As a primary matter, the ALJ and workers' compensation judge Doman reached the same ultimate conclusion – that Plaintiff was unable to return to her past work. (R. 107, 171.) Thus, the ALJ had no reason to differentiate that opinion. Moreover, Judge Doman never reached the relevant issue for purposes of Social Security: whether Plaintiff was able to perform *any* substantial work. Therefore, his disability determination was not binding on the ALJ. Rose, 1995 WL 365404, at *6.

As to the underlying medical and factual determinations, the ALJ did not disregard the proceedings at the workers' compensation level. In the workers' compensation decisions, Judge Doman reached his findings of disability by concluding that, "[t]o the extent that Drs. Rosen and Mannherz disagree, the opinions of Dr. Rosen are more credible because they are: (a) consistent with claimant's credible testimony; (b) they consider all of the claimant's work injuries including her severe headaches; and, (c) they are based upon his extensive experience in treating the claimant." (R. 171.) In the subsequent Social Security proceedings, the ALJ expressly acknowledged this medical evidence, but declined to give it the same weight as Judge Doman, reasoning as follows:

> ***Dr. Rosen's statements in Exhibit 6E (the worker's compensation deposition he gave on the claimant's behalf shortly before she settled her claim)***, Exhibit 6F and Exhibit 17F ***are not given controlling evidentiary weight***. Those exhibits are undermined by the observations and clinical findings of other examining physicians. Also, Dr. Rosen's extreme limitations are not supported by his own treatment records, as updated at Exhibits 15F, 16F and 17F.

(R. 106 (emphasis added).) The ALJ's decision, without mentioning the workers' compensation decision, then explicitly rebutted Judge Doman's basis for accepting Dr. Rosen's opinion by

14

noting that Plaintiff's testimony is not wholly credible, that Dr. Rosen's own treatment records significantly contradict his later diagnosis of a completely disabling impairment, and that the reports of Dr. Mannherz and neurologist Dr. Tartarian were more credible and consistent with objective medical findings . (R. 105-06.)  Such a determination was well within the ALJ's authority[5] and reflected clear consideration and rejection of the evidence relied upon by the worker's compensation judge.

While, for purposes of clarity, the ALJ could have expressly discussed these two workers' compensation decisions, the Court must concur with the Magistrate Judge that remand for additional analysis is simply unwarranted on the face of the record.  See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (holding that where error by ALJ is harmless and would not affect the outcome of the case, remand is not warranted); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (stating that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").  Judge Doman and the ALJ agreed on the finding that Plaintiff was too disabled to return to past relevant work.  To the extent that the ALJ made a contrary factual finding that Dr. Mannherz's testimony and functional capacity assessment was more credible than that of Dr. Rosen, the ALJ clearly explained her basis for disagreement with an accompanying citation to substantial evidence.[6]  At this level of judicial consideration, the Court's scope of review is

---

[5] See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) ("[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.").

[6] Plaintiff argues that the Magistrate Judge attempted to improperly substitute his independent analysis for the reasoning omitted by the ALJ.  She goes on the argue that the

"limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Gilmore, 356 F. Supp. 2d at 511 (quotations omitted). Given such a deferential standard, the Court cannot sustain Plaintiff's second Objection.

## IV.   CONCLUSION

In sum, the Court must overrule all of Plaintiff's pending Objections to the July 31, 2009 Report and Recommendation. To the extent that the Objections are a verbatim recitation of the arguments presented to the Magistrate Judge, the Court declines to engage in a *de novo* review. To the extent Plaintiff makes specific Objections to the Report and Recommendation, the Court concludes, upon consideration of the entire record, that the ALJ's decision was well-reasoned, complied with all of the mandates under the pertinent Social Security Regulations, and was well-supported by substantial evidence. In light of these findings, the Court adopts the Report and Recommendation and affirms the final decision of the Commissioner of Social Security.

---

district court may only review the administrative decision as it was made, as opposed to supplying factual findings or reasoning missing from the decision. (Pl.'s Objections 12.)
   Plaintiff is correct that post-hoc justifications contradict established precedent that a reviewing court may only consider what is plain on the face of the ALJ's decision and may not read into it reasoning or conclusions which are not clearly stated. SEC v. Chenery Corp., 318 U.S. 80, 87-88 (1943); Fargnoli v. Halter, 247 F.3d at 43-44 and n. 7 (3d Cir. 2001). This Court, however, finds no such error in the Report and Recommendation. Rather, the Report and Recommendation simply recognized that by discussing Dr. Rosen's opinion, which formed the basis for the workers' compensation decision, the ALJ sufficiently explained why she declined to give controlling weight to the workers' compensation judge's assessment of the evidence.